David Abrams, Attorney at Law (DA-8126)
299 Broadway, Suite 1700
New York, New York 10007
Tel. 212-897-5821 Fax 212-897-5811

United States District Court
Southern District of New York

————————————————————
)
Bryon Jackson,                                  )
                                                )
                        Plaintiff,              )
                                                )          No. 10 cv 2698 (LTS) (KNF)
            - against -                         )
                                                )
Credit Suisse Securities, LLC                   )
                                                )
                        Defendant.              )
                                                )
————————————————————)

## Brief in Opposition to Motion for Summary Judgment

Plaintiff Jackson, by his attorney respectfully submits this Brief in opposition to

Defendants' (the "Employer's") motion for summary judgment.

## Introduction

This matter is a failure-to-hire discrimination case.  The Employer does not deny

that Mr. Jackson was asked three times about his national origin in his job interview by

the decision-maker, Mr. Patrick Ward, and that Mr. Jackson was finally pressured into

revealing his national origin (Jamaican).  Nor does the Employer deny that it has given

changing and contradictory explanations for its failure to hire Mr. Jackson.  Or that its

claimed reason for rejecting him is applied selectively.

Further, Mr. Jackson was specifically advised by Mr. Ward that he had had

problems in the past with Jamaicans and but that Mr. Ward did have an employee of

Haitian descent.  This statement has been corroborated by discovery -- Mr. Ward does indeed have an employee of Haitian descent.

Thus, there is ample direct evidence to conclude that Mr. Jackson was the victim of national origin discrimination.

The Employer attempts to side-step this issue in two ways:  First, by incorrectly claiming that Mr. Jackson must prove his case using a *McDonnell-Douglas* analysis.  In actuality, the case law is clear that *McDonnell-Douglas* is merely an option for discrimination Plaintiffs who do not have direct evidence of discrimination as the Plaintiff does here.  In any event, there is adequate evidence of discrimination even under a *McDonnell-Douglas* analysis.

Second, the Employer asks the Court to resolve factual issues, such as whether Mr. Jackson falsified his job application or was qualified for the job in question.  This is of course impermissible on a motion for summary judgment.

For these reasons, the Employer's motion should be denied.

## Facts

Plaintiff Bryon Jackson ("Mr. Jackson"), who is of Jamaican national origin, applied for employment with Defendant Credit Suisse Securities, LLC (the "Employer") as an Operations Specialist in or about January of 2010.  (Jackson Aff. Para. 2,3). Although Mr. Jackson lacks a Series 7 or Series 63 license, he was specifically advised by the Employer that the position did not require that he have such a license when he started the job.  (Jackson Aff. Para. 4)  Further, Mr. Jackson was specifically advised by the Employer that he was qualified for the job.  (Jackson Aff. Para. 5)  Indeed, one interviewer stated that he was "perfect" for the job.  (*Id.*)

Mr. Jackson's interviews took place on or about January 28, 2010.  Among other people, Mr. Jackson was interviewed by Mr. Ward.  (Jackson Aff. Para. 6).  During the interview, Mr. Ward asked Mr. Jackson about his national origin three times.  (*Id.*) (Although Mr. Ward claimed at deposition that the question was simply to help Mr. Jackson feel comfortable, Mr. Ward does not deny asking the question multiple times. Abrams Aff. Para. 4))  Mr. Jackson finally gave into the pressure of this inappropriate question and stated that he was of Jamaican origin.  (Jackson Aff. Para. 6)  Mr. Ward then advised Mr. Jackson that he was from Barbados and had a Haitian on his team but that he had not gotten along well with Jamaicans in the past.  (*Id.*)  Discovery has revealed that Mr. Ward is indeed from Barbados and does indeed have a Haitian on his team.  (Abrams Aff. Para. 5)

Mr. Jackson was denied the position.  (Jackson Aff. Para. 7).  The Employer has given confusing and contradictory reasons for the denial.  For example, the Employer advised the EEOC that Mr. Jackson was denied employment because he lacked Series 7 and 63 licenses.  (Abrams Aff. Para. 6)  However, Mr. Ward admitted at his deposition that he learned Mr. Jackson lacked the licenses from an HR person with the Employer before the decision not to hire and therefore before the actual interview.  (Abrams Aff. Para. 7)  Mr. Ward also testified that he did not decide until mid-way through the interview that Mr. Jackson would not be hired and that it was an "open question" at the time of the interview as to whether Mr. Jackson had the licenses.   (*Id.*)  Of course there is no possible way that this can all be true.  If Mr. Ward learned about Mr. Jackson's lack of licenses from Ms. Egan before he made the decision not to hire Mr. Jackson, and the decision was made in the middle of the interview, then Mr. Ward must have learned

about it before the interview.  So it could not have been an "open question" at the time of the interview as to whether Mr. Jackson had the licenses.

Further, the Employer also explicitly stated to the EEOC that it (specifically Mr. Ward) decided to consider Mr. Jackson even though he lacked the Series 7 and 63 licenses.  (Abrams Aff. Para. 8)  In addition, the Employer apparently employs and continues to employ people who are theoretically subject to the same licensing requirement but who lack the licenses.  (Abrams Aff. Para. 9)

The Employer did not even hint that it intended to raise an after-acquired evidence defense until long after the close of discovery.  (Abrams Aff. Para. 2)  It never moved to amend its Answer and in asserting its defense, it relies on an affidavit from a Dominique Christen who was never scheduled on the Employer's automatic disclosures.  (*Id.*) Thus, Mr. Jackson was never given the opportunity to investigate the Employer's self-serving claims on this issue.

Although Mr. Jackson subsequently obtained employment, that employment has since ended.  (Jackson Aff. Para. 11).  Mr. Jackson's resume was substantially accurate.  (Jackson Aff. Para. 9-10).

## **Argument**

### I.    **The Direct Evidence Supports an Inference of Discrimination**

The Employer attempts to sidestep Mr. Jackson's best evidence of discrimination by incorrectly claiming that he must prove his case indirectly by means of a *prima facie McDonnell Douglas* case.  For example, the Employer relies on the case of *Fernandez v. United States Postal Service*, 804 F. Supp. 448 (E.D.N.Y. 1992) which analyzed the Plaintiff's discrimination claim under a *McDonnell Douglas* analysis.  *Id.* at 451.

Significantly,  the United States Supreme Court has made clear that this type of proof is simply an option for discrimination plaintiffs and not a requirement.  As the Court held in *Swierkiewicz v. Sorema*, 534 U.S. 506 (2002), "the *McDonnell Douglas* framework does not apply in every employment discrimination case. For instance, if a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case."  *Id.* at 511.

Here, the direct evidence of discrimination is compelling.  The Employer's decision-maker admits that he asked Mr. Jackson about his national origin 3 times during the course of his interview.  Just the fact that Mr. Jackson was asked this inappropriate question is strong direct evidence of discrimination.  Why would the Employer ask this question during a job interview if the answer had no bearing on the candidate's chances of success?  And if the question was simply to help Mr. Jackson feel comfortable, why would Mr. Ward continue to ask it until Mr. Jackson finally answered?

Further, after Mr. Jackson reluctantly disclosed his national origin, Mr. Ward specifically advised him that he had had problems in the past working with Jamaicans.

Finally, Mr. Ward attempted to cover up his conduct by inventing a false reason for his rejection of Mr. Jackson.  Specifically, the Employer, including Mr. Ward, has claimed that Mr. Jackson was rejected because of his lack of Series 7 and 63 certification.  Indeed, Mr. Ward testified at deposition that he did not learn until Mr. Jackson's job interview that he lacked the Series 7 and 63 certifications.

However, the Employer has admitted that this licensure was not necessary; that it was aware Mr. Jackson lacked the licenses but interviewed him nonetheless; and that it continues to employ persons who are theoretically subject to the same requirements but also lack such licenses.  Indeed, the Employer specifically admitted to the EEOC that it

5

decided to interview Mr. Jackson despite his lack of Series 7 and 63 licenses and that the requirement could be relaxed.

Unsurprisingly, case law confirms that inappropriate interview questions can give rise to an inference of discrimination, particularly where there is no legitimate reason for such questions. *See*, *e.g.*, *Barbano v. Madison County*, 1988 WL 96581, No. 82 cv 1160 (N.D.N.Y. Sep. 14, 1988). Given that the Employer specifically and emphatically asked Mr. Jackson about his national origin; strongly implied that this was a negative factor in his candidacy; and then fabricated a reason for rejecting him, there is strong direct evidence that Mr. Jackson was the victim of discrimination. Accordingly, the Employer's motion should be denied.

**II.     There is Also a Prima Facie Case of Discrimination**

Even ignoring the strong direct evidence of discrimination, there is also a *prima facie* case under *McDonnell Douglas*. The Employer does not deny that Mr. Jackson was a member of a protected class; that he applied for the position in question; that he was rejected; or that it continued to search for applicants after Mr. Jackson was rejected.

Instead, the Employer argues that Mr. Jackson was not qualified for the position on the grounds that he lacked proper licensure. However, as noted previously, this claim is simply false. Mr. Jackson was specifically advised by the Employer that he would not need these licenses right away. Further, the Employer now admits deciding to interview him with full knowledge that he lacked the Series 7 and 63 licenses. Indeed, the Employer was well aware of Mr. Jackson's qualifications when he was brought in for an interview and specifically advised him that he was qualified. Accordingly, there exists a *prima facie* case of discrimination here.

Further, the fact that the Employer has offered changing and contradictory explanations for the failure to hire permits an inference that its proffered non-discriminatory reason is but a pretext.  *See, e.g., EEOC v. Ethan Allen, Inc.,* 44 F.3d 116, 120-21 (1994) (contradictory explanations for decision to discharge can allow jury to infer pretext).

Accordingly, even ignoring Mr. Jackson's direct evidence of discrimination, summary judgment should be denied.

### III.    Mr. Jackson Did Not Fabricate His Work Experience

Mr. Jackson's resume was substantially accurate; he simply worked at Merrill Lynch through an agency.  Thus his employment records are stored elsewhere.  In any event, even if one assumes for the sake of argument that Mr. Jackson's resume was fraudulent, the only result would be that his wage claim would be cut off as of the day the fraud was discovered.  *See McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 362 (1995).

Last, the Employer should regardless be precluded from asserting this defense since it was not asserted in the Employer's Answer; it relies on a witness - Dominique Christen -- who was apparently not disclosed pursuant to Rule 26; Mr. Jackson never had the opportunity to take discovery on this issue; and it appears the Employer did not move to amend its Answer or Rule 26 disclosures or offer any legitimate explanation for its failure to do so.  However, if the Court should consider the affidavit of Ms. Christen, then Plaintiff should be afforded the opportunity to take further discovery pursuant to Rule 56(d).

## <u>Conclusion</u>

For the foregoing reasons, it is respectfully submitted that the Employer's motion

for summary judgment should be denied.

Respectfully submitted,

/s/ David Abrams

_____

David Abrams, Attorney at Law
 Attorney for Plaintiff
Jackson
299 Broadway Suite 1700
New York, NY 10007

Dated: New York, NY
       February 7, 2011